1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 ## EASTERN DISTRICT OF CALIFORNIA

10

11 JAMES LEOS,

Case No. 1:14-cv-02029-LJO-JLT (PC)

12           Plaintiff,

13      v.

**FINDINGS AND RECOMMENDATIONS ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

14 RASEY, et al.,

**(Doc. 88)**

15           Defendants.

**21 DAY DEADLINE**

16

17

18                              **FINDINGS**

19      Officer Rasey and Sergeant Stonestreet move for summary judgment contending they

were not deliberately indifferent to Plaintiff's serious medical needs and that they did not retaliate

20 against Plaintiff for filing administrative grievances. (Doc. 88.) For the reasons discussed

21 below, the Court finds that Defendants' motion should be granted as to Plaintiff's retaliation

22 claim against Defendant Stonestreet as well has his deliberate indifference claim against

23 Defendants Stonestreet and Rasey, but that it should be denied as to Plaintiff's retaliation claim

24 against Defendant Rasey.

25 **I.    Summary Judgment Standard**

26      Summary judgment is appropriate where there is "no genuine dispute as to any material

27 fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington*

28

                                        1

*Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987).  The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*

*Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson*, 477 U.S. at 252. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *Wool*, 818 F.2d at 1436.

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## III. Discussion and Analysis

### A. Eighth Amendment -- Deliberate Indifference

#### 1. Plaintiff's Claim

Plaintiff alleges that, on February 22, 2013, he reported to his job assignment and told Defendant Rasey of work/physical limitations he had based on a previous, serious injury. (Doc. 17, SAC, p. 3.) Rasey allegedly ordered Plaintiff to work beyond his limitations which caused him to re-injure and cause pain in his right upper extremity. (*Id.*, p. 4.) When Plaintiff informed Rasey of his pain, Plaintiff was given ice and allowed to leave for the day. Though Rasey indicated it would be okay for Plaintiff to change jobs, she refused to document this in writing. (*Id.*) Thereafter, Plaintiff allegedly spoke with Defendant Stonestreet regarding his injury from working that day and asked to be assigned to another job. (*Id.*) Despite knowing of Plaintiff's situation, Stonestreet ordered Plaintiff to continue working that job assignment and told Plaintiff if he attempted to get reassigned to another job, Stonestreet would issue two serious rule violation

reports against him.  (*Id.*)  Plaintiff again spoke with Rasey who told Plaintiff the only way to get a job change was "C over C" which meant to receive disciplinary reports against him which would drop both his work and privilege group to "C," equating to program failure.  (*Id.*)  Because of the stance Defendants took, Plaintiff filed an IA under the Americans with Disabilities Act on March 7, 2013, requesting a job change, which was granted.  (*Id.*, p. 5.)

### 2.    Defendants' Motion

Defendants argue that the above facts show Plaintiff cannot establish that, on February 22, 2013, Plaintiff's previous right hand injury did not present a "serious medical need" to Defendant Rasey because Plaintiff had already been cleared to work the line server position with no work restrictions.  Moreover, Plaintiff did not have a medical lay-in that would have excused him from working the line-server position.  Despite this, Defendants argue that Rasey accommodated Plaintiff by assigning him the light-duty work of wiping tables.  Defendants also argue that Plaintiff also never told Rasey he was injured.  Though Plaintiff claims he told Stonestreet about the injury on March 6 or 7, 2013, Defendants contend this cannot be truthful since Stonestreet was not at the prison those days.  Thus, Defendants argue, Plaintiff cannot prove that either Rasey or Stonestreet acted with deliberate indifference.

### 3.    Legal Standard

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate."  *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  *Farmer* at 834.  Indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical

condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer*, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health . . . ." *Farmer*, at 843 (citing *Helling*, 509 U.S. at 35). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id*., at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id*., at 836-37.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' " *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson*, 290 F.3d at 1188).

There are a number of Ninth Circuit cases finding liability under the Eighth Amendment when prison officials act contrary to physicians' orders. *See e.g. Estelle v. Gamble*, 429 U.S. at 104-05 (liability for interfering "with treatment once prescribed"); *Hamilton v. Endell*, 981 F.2d

1062, 1066 (9th Cir. 1992) (reversing summary judgment where prison officials forced prisoner to endure a plane flight that resulted in ear injury, in direct contravention of a treating physician's previous orders); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curium) (reversing summary judgment where medical staff knew that pretrial detainee had head injury, but prescribed contraindicated medications, disregarding evidence of complications to which they had been specifically alerted by private treating physician); *Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970) (finding cognizable claim for deliberate indifference where warden refused to authorize prisoner's receipt of medicine that had been previously prescribed by a physician).

Likewise the Courts of other federal Circuits have also found deliberate indifference where prison officials ignore a previous physician's treatment plan. *See e.g. White v. Napoleon*, 897 F.2d 103 (3rd Cir. 1990) (finding cognizable claim for deliberate indifference where prison officials ignored private hospital's treatment orders and refused inmate's access to prescribed medication); *Gill v. Mooney*, 824 F.2d 192 (2nd Cir. 1987) (finding cognizable claim where prison officials refused to permit plaintiff to participate in exercise program prescribed by doctor); *Eades v. Thompson*, 823 F.2d 1055 (7th Cir. 1987) (finding cognizable claim where prisoner alleged that prison officials made him travel and carry a heavy box, causing a surgical incision to gape open, in violation of prior medical orders); *Martinez v. Mancusi*, 443 F.2d 921 (2nd Cir. 1970), cert. denied 401 U.S. 983, cited with approval by *Estelle*, 429 U.S. at 105 n.10 (finding deliberate indifference where prison staff forced post-surgical prisoner-patient to walk, ignoring warnings from hospital personnel that inmate should not be moved).

### 4. Defendant Rasey

#### a. Plaintiff's Work Restrictions on February 22, 2013

Defendants contend that the absence of any medical work restrictions attributable to Plaintiff's right hand on February 22, 2013, is pivotal to the determination in this case whether Defendant Rasey forced Plaintiff to perform job duties contradictory to his medical restrictions.

Defendants acknowledge that Plaintiff hurt his right hand in April 2007, which did not result in any physical limitations or disabilities even though Plaintiff claimed it limited his ability to conduct certain activities. (Leos Depo. 9:5-9:7, 10:19-11:3.) Defendants' evidence shows that,

on February 20, 2013, Plaintiff was assigned to the E-Facility dining hall as a line server based on correctional staff's review of Plaintiff's Central File and work restrictions. (Doc. 88-3, Defs.' Stmt. of Undisp. Fact (DSF) 3.) Defendants also correctly point out that when Plaintiff arrived in the dining hall on February 22, 2013, it had been five years since he suffered the hand injury and that Plaintiff had been cleared several times for full work duty without any restrictions -- including food handling. (DSF 1-3.)

Plaintiff stipulates that he was qualified for full work assignments without restrictions, including food-handling on January 11, 2011, which was confirmed by a CDCR Form 128-G Classification Chronos on October 23, 2012 and January 9, 2013.[1] (Doc. 108, Plntf.'s Disp. of Facts (PDF) 1, 2.) Plaintiff also stipulates that, on February 20, 2013, he was assigned to the E-Facility Dining hall as a line server based on correctional staff's evaluation of his Central File and work restrictions. (PDF 3.) Defendants' evidence shows that Plaintiff arrived at the E-Facility dining hall on February 22, 2013, at approximately 4:30 a.m. (DSF 4) which Plaintiff stipulates to (PDF 4).

There is no dispute that Plaintiff was cleared for full food-handling work assignment, without restrictions, on February 22, 2013, when he reported to the E-Facility for work. Thus, Rasey was not deliberately indifferent to Plaintiff's medical condition when she required him to work that day. 511 U.S. at 837; *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir.1994) (The Eighth Amendment does not apply where prisoners have been required to work unless they are compelled to perform physical labor beyond their physical limitations.) Defendants are thus entitled to summary judgment to the extent that Plaintiff claims Rasey was deliberately indifferent to his serious medical needs on February 22, 2013 for requiring him to work. *In re Oracle Corp.*, 627 F.3d at 387. This is the only issue in this case upon which the parties agree.

### b. Events on February 22, 2013 in the E-Facility Dining Hall

Defendants' evidence shows that, at some point after arriving at the E-Facility dining hall, Plaintiff informed Rasey that he could not work the line server position because of a previous

---

[1] Though Plaintiff disputes whether the 2012 and 2013 classification chronos were issued by "UCC" or "ICC," he does not dispute that he was cleared for full duty work assignments, including food-handling, without restrictions on these dates. (*See* Doc. 108, PDF 2.)

injury to his right hand. (DSF 5.) Rasey asked Plaintiff to produce a medical lay-in that would excuse him from working in the dining hall that day.[2] (DSF 6.) Plaintiff told Rasey that he did not have one. (DSF 7-8.) Defendants' evidence shows that, despite Plaintiff's lack of a lay-in, Rasey accommodated Plaintiff's injury by allowing him to just wipe tables after inmates finished eating breakfast. (DSF 9.) Between 4:30 a.m. and 7:00 a.m., Rasey and the other inmate-workers prepped the dining hall for breakfast, but Plaintiff did not perform any physical work. (DSF 10.)

Defendants' evidence also shows that, between 7:05 a.m. and 8:05 a.m., the E-Facility dining hall served breakfast to the E-Facility general population. During this time, Plaintiff wiped down tables after inmates finished their breakfast. (DSF 11.) Plaintiff did not scoop eggs or push heavy carts filled with food. (Rasey Decl., ¶ 8; Stewart Decl., ¶ 5.) From 8:05 a.m. to 9:00 a.m., Plaintiff and the other inmate-workers were fed breakfast, after which Rasey allowed Plaintiff and several other inmates to leave the E-Facility dining area. (DSF 12.) Defendants argue that these facts establish that Plaintiff did not have a serious medical need when he arrived in the E-Facility dining hall on February 22, 2013, and that there was no reason to infer that Plaintiff faced a serious medical need by performing a job assignment for which he was medically cleared, let alone the light-duty of wiping tables that Rasey allowed him to do instead of being a server.

The Court finds that Defendants have met their burden to demonstrate the absence of a genuine issue of material fact as to Plaintiff's deliberate indifference claim under the Eighth Amendment. The burden therefore shifts to Plaintiff to establish that a genuine issue as to a material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that a dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973).

---

[2]A medical lay-in is a doctor's written order confining an inmate to his or her housing unit with the exception of receiving meals, medication, and attending sick-call.

Plaintiff submits evidence that shows the first time he spoke to Rasey on February 22, 2013, was after she had already assigned Plaintiff to "eggs" on the posted job assignments for the day. (Doc. 106, Leos Decl., ¶ 9.) Plaintiff spoke to Rasey in her office -- inmate Rivera was also in the office, inmate Bolen stood right outside the office door, and no other staff or inmates were near. (*Id.*, ¶¶10-11.) Plaintiff told Rasey about his 2007 hand injury and asked for a job change to a porter position in E4, but Rasey declined as she did not like the inmate who would take Plaintiff's place. (*Id.*, ¶¶12-13.) Rasey never asked Plaintiff if he had a lay-in. (*Id.*) Rasey became upset and ordered Plaintiff to serve eggs for the entire yard and all of Ad-Seg and stated that it took only a few hours and if Plaintiff did what she and inmate Riveras instructed, she would give Plaintiff a job change. (*Id.*, ¶14.)

Plaintiff thereafter served eggs for Ad-Seg and E1, refilled the empty egg pan at least once, and listened to advise from other inmates on how to work. (Doc. 106, Leos Decl., ¶15; Doc. 102, Shofner Decl., ¶¶28, 29, 30, 32; Doc. 104, Rodriguez Decl., ¶¶11, 12, 13, 14.) Plaintiff pushed a cart from the kitchen to E1 at Rasey's direction. (Doc. 106, Leos Decl., ¶16; Doc. 104, Rodriguez Decl., ¶¶12-14.) When he returned, Rasey asked Plaintiff if his hand was hurting, he responded in the affirmative, and she allowed him to go to E Medical for a pain pill which he did. (*Id.*, ¶17.) The pain pill took immediate effect and masked Plaintiff's pain until after 9:00 a.m.[3] (*Id.*) When Plaintiff returned from getting a pain pill, he resumed serving eggs and served all of E Yard from roughly 7:00 a.m. to 8:00 a.m. (*Id.*, ¶18.) After everyone was served, Rasey ordered Plaintiff to assist in clean-up of the Dining Hall B-Side -- he swept, mopped, and cleaned the "juice bar." (*Id.*, ¶19.) Plaintiff did not wipe any tables on February 22, 2013. (Doc. 106, Leos Decl., ¶20; Doc. 102, Shofner Decl., ¶¶31, 33, 34; Doc. 104, Rodriguez Decl., ¶¶ 15, 16; Doc. 105, Spencer Decl., ¶¶4-10, 12.)

While Plaintiff served eggs on February 22, 2013, he spoke to inmate Shofner; inmates Bolen, Rivera, and Davis all saw Plaintiff serve eggs; inmate Davis assisted Plaintiff as "linebacker"; inmates Bolen and Rodriguez saw Plaintiff push a cart to E1; and Rasey's

---

[3] This is when Defendant Rasey's evidence shows she allowed Plaintiff and other inmate-workers to leave the dining hall. (*See* DSF 12.)

assignment of Plaintiff to serving eggs was posted that day for the inmates to see. (Doc. 106, Leos Decl., ¶21;Doc. 102, Shofner Decl., ¶28-30, 32; Doc. 104, Rodriguez Decl., ¶¶4, 5, 7, 8-14.) Around 9:00 a.m., Rasey brought out a deep pan of ice for the inmates. (Doc. 106, Leos Decl., ¶22; Doc. 104, Rodriguez Decl., ¶20.) Plaintiff filled a bag and immediately put it on his wrist. (Doc. 106, Leos Decl., ¶22.) Plaintiff was allowed to leave a few minutes later with the bagged ice. (*Id.*; Doc. 102, Shofner Decl., ¶35.)

Though Plaintiff's evidence contradicts Defendants' evidence as to the job tasks Rasey had him perform on February 22, 2013, it does not show that Rasey was aware that requiring Plaintiff to work, in either capacity -- as a table wiper, or as a line server -- would pose a substantial risk of serious injury to Plaintiff. Plaintiff was assigned to work in the E-Facility as a "Dining Lineserver" by correctional staff, "R.A. Dean, Inmate Assignment Lieutenant," not Rasey. (*See* Doc. 90, Barba Decl., Exh. D, p. 11.) Plaintiff presents no evidence to show that he had any medical restrictions to limit the job duties he could be assigned on February 22, 2013.

Plaintiff's evidence that he spoke with Rasey before beginning duties as a lineserver about a job change and that he told her about nerve damage in his hand from the 2007 injury and an "ADA appeal he had granted" are insufficient to have required Rasey to change his job from that assigned by the Inmate Assignment Lieutenant. (*Id.*) Further, Plaintiff does not submit any evidence to show that he complained to Rasey that working as a lineserver injured or reinjured his hand, or that he requested to be allowed to go to medical for a pain pill which Rasey declined, or that the work he was doing caused him to experience so much pain that the pain pill did not have the desired masking effect.

To the contrary, Plaintiff states in his declaration that, when he returned from pushing a cart from the kitchen to D1, Rasey asked Plaintiff if his hand hurt. (Doc. 106, Leos Decl., ¶¶16-17.) When Plaintiff responded in the affirmative, Rasey told Plaintiff that if he took medication for it, he could go to medical to get a pain pill, which he did. (*Id.*) It would be a different result if Plaintiff was in pain and asked Rasey to let him go get a pain pill and she refused. Further, Plaintiff states that "the pill took immediate effect and masked the pain until after 9 a.m." (*Id.*) Hence, even based on Plaintiff's evidence, it cannot be inferred that Rasey forced Plaintiff to

work under conditions that she knew posed a substantial risk of serious harm or caused him to experience severe or substantial pain.  *Colwell*, 763 F.3d at 1066.  Even though Plaintiff experienced pain in his hand after working in the E-Facility dining hall on February 22, 2013, he does not show that Rasey was deliberately indifferent to his serious medical needs when she required him to work, whether as a lineserver or wiping tables, on that day.  Rasey is thus entitled to summary judgment on Plaintiff's claim that she was deliberately indifferent to his serious medical need on February 22, 2013, when he worked in the E-Facility dining hall under her supervision.

### b.      Defendant Stonestreet

Plaintiff alleges that on March 6, 2013, he met with Stonestreet regarding his right hand injury and requested to be transferred out of the dining hall job assignment.  (SAC 4:16-4:24; Leos Depo. 35:2-35:24.)  Plaintiff claims Stonestreet told Plaintiff he was already aware of Plaintiff's February 22, 2013 injury and ordered Plaintiff to report back to the dining hall to continue working his job assignment.  (SAC 4.)  Plaintiff also alleges Stonestreet further threatened Plaintiff that if he attempted to transfer out of the job assignment, Stonestreet would issue Plaintiff two RVRs.  (*Id.*)  Defendants contend, as stated above, Plaintiff's 2007 right hand injury did not present a serious medical risk.  (DSF 1-3, 7-8, 14-17, 28.)  Furthermore, Defendants' evidence shows that Stonestreet was not at the prison on March 6 and 7, 2013.  (DSF 19.)  Defendants argue that these facts establish that Plaintiff cannot prove either element of a deliberate indifference medical claim against Stonestreet.

The Court finds that Defendants have met their burden to demonstrate the absence of a genuine issue of material fact as to Plaintiff's deliberate indifference claim under the Eighth Amendment.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to a material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th

1    Cir. 1973).

**5.      Plaintiff's Opposition**

3            In opposition, Plaintiff argues that he spoke with Stonestreet on March 10, 2013, not

4    March 6, 2013. (Doc. 106, Leos Decl., ¶ 54.) In that conversation, Plaintiff contends Stonestreet

5    joined Rasey by ordered him to report to work at the dining hall if he did not have a lay-in and

6    asserts that Rasey told Stonestreet that Plaintiff did not get hurt like he was saying "because there

7    was no 7219 filled out." Plaintiff also contends Stonestreet said that he had confidential

8    informants ready to inform on Plaintiff, that Plaintiff had signed his job description and was

9    aware of his responsibilities, that two serious RVR 115s were on their way, and that Plaintiff was

10   only getting out of dining by going "C over C." (Id.) Plaintiff states that he made a brief note of

11   this encounter, that it took place on March 10, 2013 at 1 p.m. and that he sent the note to his

12   family member Nancy Fortson in a letter that was postmarked March 23, 2013. (Id.)

13           Plaintiff's declaration statements that this conversation took place on March 10, 2013

14   (Doc. 106, Leos Decl., ¶54), do not override the statements made in his deposition that it took

15   place on March 6, 2013 (Doc. 88-4, Leos Depo., 35:2-24). "A party cannot create a genuine issue

16   of material fact to survive summary judgment by contradicting his earlier version of the facts."

17   *Block v. City of Los Angeles*, 253 F.3d 410, 419, n. 2, (9th Cir. 2001) *ref. Radobenko v.*

18   *Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). Further, as noted during Plaintiff's

19   deposition, the allegations in the Second Amended Complaint, upon which Plaintiff was allowed

20   to proceed, were vague as to when Plaintiff discussed his hand and the job in the dining hall with

21   Stonestreet. (Doc. 88-4, Leos Depo., 35:2-25.) The vagueness of Plaintiff's allegations in the

22   SAC were leniently construed in Plaintiff's favor, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

23   2010), as having occurred on the same date that he allegedly performed tasks which caused him

24   to reinjure his right hand. (*See* Doc. 17, p. 4.) Had Plaintiff alleged in the SAC that his

25   conversation with Stonestreet took place in early March 2013 and not on February 22, 2013 when

26   he was allegedly forced to work in excess of his medical restriction, it is not likely the Court

27   would have found his Eighth Amendment claim against Stonestreet to be cognizable.

28           Whether Plaintiff's alleged conversation with Stonestreet took place on March 6, 2013 (as

Plaintiff stated in his deposition) or March 10, 2013 (as stated in Plaintiff's opposition) is a distinction without consequence. As previously noted, the Eighth Amendment does not apply where prisoners have been required to work unless they are compelled to perform physical labor beyond their physical limitations. *Berry*, 39 F.3d at 1057. According to the evidence submitted by both sides, in 2013, Plaintiff had a lay-in for February 23rd to February 25th (Doc. 88-6, Carrasquillo Decl., Exh. C, p. 11; Doc. 106, Leos Decl., Exh. S, p. 61); for February 25th to February 27th (Doc. 88-6, Carrasquillo Decl., Exh. D, pp. 14-15); for February 27th to March 2nd (Doc. 106, Leos Decl., Exh. G, p. 35); for March 3rd to March 5th (Doc. 88-6, Carrasquillo Decl., Exh. F, p. 20); and for April 11th to May 11th (Doc. 88-6, Carrasquillo Decl., Exh. K, pp. 33, 34; Doc. 106, Leos Decl., Exh. M, p. 47). There is no evidence that Plaintiff had a lay-in for the period of time from March 6th to April 10th. Thus, during the time that Plaintiff allegedly spoke to Stonestreet about a job change, whether on March 6, 2013 or March 10, 2013, Plaintiff had no medical restrictions necessitating his being excused from kitchen work or that he be transferred. *Berry*, 39 F.3d at 1057.

Plaintiff thus fails to show that Stonestreet was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," drew that inference and failed to take reasonable measures to abate when he declined Plaintiff's request to be transferred out of the kitchen. *Farmer*, 511 U.S. at 837, 847. Given this,[4] Stonestreet is entitled to summary judgment on Plaintiff's Eighth Amendment claim as Plaintiff fails to demonstrate "the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323).

**B.    Retaliation**

**1.    Legal Standard**

The First Amendment protects inmates from retaliation for engaging in protected conduct. A retaliation claim has five elements. *Id.* at 1114. *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009).

First, the plaintiff must allege that the retaliated-against conduct is protected. *Id.* The

---

[4] Likewise given this, Defendants' objection to Plaintiff's purported March 10, 2013 note (*See* Docs. 114-4, Def. Objs., pp. 4-5; Doc. 106, Plntf. Exh ZA, pp. 81-83) is disregarded since moot.

filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005). Second, the plaintiff must show the defendant took adverse action against the plaintiff. *Rhodes*, at 567. Third, the plaintiff must show a causal connection between the adverse action and the protected conduct. *Waitson*, 668 F.3d at 1114. Fourth, the plaintiff must establish that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. Fifth, the plaintiff must show "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985). While Plaintiff need only allege facts sufficient to support a plausible claim for relief, the mere possibility of misconduct is not sufficient, *Iqbal*, 556 U.S. at 678-79, and the Court is "not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

### 2. Plaintiff's Claim

Plaintiff's retaliation claim is premised on allegations that, after he sustained injury to his right upper extremity at work on February 22, 2013, he received medical treatment. (Doc. 17, SAC, p. 5.) The next day, Plaintiff received a "lay-in" to not work. (*Id.*) However, Defendants issued a disciplinary chrono 128A against Plaintiff because he did not report to work on February 23, 2013. (*Id.*) On March 25, 2013, Plaintiff filed an inmate appeal (SATF E-13-01320) to get the 128A dismissed, for which Stonestreet interviewed him on May 12, 2013. (*Id.*)

On May 20, 2013, Defendants allegedly issued an RVR 115 against Plaintiff in retaliation for his having filed IA 01320 to get the 128A dismissed. (*Id.*, pp. 5-6.) On May 22, 2013, Stonestreet allegedly issued another RVR 115 (#13-05-030) against Plaintiff for "unlawful influence," alleging that Plaintiff gave false statements about his medical condition to avoid work, obtain lay-ins, and to be unassigned from working the dining assignment. (*Id.*, p. 6.)

On June 15, 2013, Plaintiff was found guilty of unlawful influence on RVR 13-05-030. (*Id.*) On July 18, 2013, Plaintiff filed another IA (SATF E-13-02832) challenging the finding of

guilt on the RVR for unlawful influence. (*Id.*, p. 7.) On October 18, 2013, IA 02832 was granted and the RVR for unlawful influence (#13-05-030) was allegedly dismissed. (*Id.*)

### 3. Defendants' Motion

Defendants argue that, according to Stonestreet's investigation into IA 01320, Plaintiff refused to work his kitchen job assignment, falsely told correctional staff he had medical lay-ins to avoid working his job assignment, and made repeated efforts to avoid working by telling medical staff he was injured on February 22, 2013, despite medical evidence to the contrary. (DSF 39-49, 52-55.) Stonestreet believed that Plaintiff was only interested in manipulating staff to avoid work when he saw that Plaintiff stopped asking for medical lay-ins once he was removed from his kitchen job assignment. (DSF 54-55.) Such behavior was not only a violation of Title 15, but a disruption of the E-Facility dining hall's ability to feed its thousands of inmates. (DSF 56.)

Without Plaintiff working, the dining hall would have been short-staffed, forcing correctional staff and inmate-workers to fill in for Plaintiff, thereby increasing the amount of work everyone else had to do while delaying the dining hall from getting its inmates fed and off to their scheduled programming activities for the day. (DSF 56.) Defendants argue that Plaintiff's conduct amounted to undue influence over correctional staff to get out of his job assignment, citing Cal. Code Regs. tit. 15, § 2013. Defendants argue that Stonestreet had a legitimate correctional purpose in maintaining prison discipline and institutional order when he issued Plaintiff RVR Log No. 13-05-030, citing *Barnett*, 31 F.3d at 815-16.

For these same reasons, Defendants contend Rasey's conversation with Stonestreet regarding the February 22, 2013 incident occurred to further legitimate correctional goals. Stonestreet spoke to Rasey as part of his investigation into Plaintiff's unlawful influence. (DSF 52.) Defendants claim that by assisting Stonestreet in his investigation, Rasey was doing her part to maintain institutional discipline and order, citing *Barnett*, 31 F.3d at 815-16; Cal. Code Regs. tit. 15, § 3084.1(d) (2013).

Defendants also argue that Plaintiff cannot show that the pursuit of his inmate appeal was the substantial or motivating factor behind the issuance of the RVR. Defendants maintain their

evidence shows that Stonestreet issued the RVR because of Plaintiff's repeated efforts to avoid working his job assignment and not because of Plaintiff's pursuit of the inmate appeal. When Stonestreet conducted his investigation into Plaintiff's inmate appeal (SATF E-13-01320), he arguably uncovered several inconsistencies which implied to him that Plaintiff was attempting to avoid his job assignment. (DSF 38-48, 51-55.) Notwithstanding this evidence, Stonestreet issued a decision on IA 01320 admittedly using only some of the relevant information he gleaned from his investigation. (DSF 48.) Once Stonestreet's involvement with IA 01320 was over, he continued investigating Plaintiff's possible unlawful influence over correctional staff. (DSF 51-55; & Cal. Code Regs. tit. 15, § 3084.1(d).) After reviewing all of the evidence, Stonestreet concluded that Plaintiff engaged in a concerted effort to avoid working by misinforming staff about the nature and extent of his hand injury. (DSF 54.) By the time Stonestreet issued the RVR, Stonestreet's involvement with IA 01320 had already ended. (DSF 48.)

Defendants maintain that, given that Stonestreet uncovered evidence of Plaintiff's unlawful influence while investigating IA 01320, he was bound by Title 15 to continue pursuing the potential rules violation, despite the fact that it arose from processing an inmate appeal. Cal. Code Regs. tit. 15, §§ 3084.1(d). Furthermore, as a peace officer, Stonestreet was obligated to investigate this potential rule violation; not doing so would have constituted a dereliction of his duties. (Stonestreet Decl. ¶ 4; Cal. Code Regs. tit. 15, §§ 3013, 3291; *accord Holt v. Workers' Comp. Appeals Bd*., 187 Cal. App. 3d 1257, 1261 (1986) (listing Title 15 provisions to "prevent escapes or disorder, report rule violations, and to maintain the security and safety of the institution.")).

Further, Defendants' contend the evidence shows that Rasey's conversation with Stonestreet regarding the February 22, 2013 incident was not motivated by Plaintiff's submission of IA 01320. Instead, Rasey's cooperation with Stonestreet's investigation was in furtherance of pursuing the legitimate penological goal of stemming inmates' unlawful influence over staff. (DSF 52.) As such, her cooperation with Stonestreet's investigation into Plaintiff's unlawful influence was not motivated by Plaintiff's submission of IA 01320. Defendants contend they were enforcing legitimate penological goals and Plaintiff, therefore, cannot prove retaliation,

citing *Barnett*, 31 F.3d at 816; Cal. Code Regs. tit. 15, §§ 3013, 3084.1(d), 3291.

The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). Given this deference, the Court finds that Defendants have met their burden to demonstrate the absence of a genuine issue of material fact as to Plaintiff's retaliation claim under the First Amendment. The burden therefore shifts to Plaintiff to establish that a genuine issue as to a material fact exists, *see Matsushita,* 475 U.S. at 586, by demonstrating "that there were no legitimate correctional purposes motivating the actions he complains of," *Pratt*, 65 F.3d at 808. Plaintiff must tender evidence of specific facts in support of his contention that a dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong*, 474 F.2d at 749.

### 3. Plaintiff's Opposition

#### a. IA 01320

Plaintiff's retaliation claim is premised on allegations that, after he sustained injury to his right upper extremity at work on February 22, 2013, he received medical treatment. (Doc. 17, SAC, p. 5.) The next day, Plaintiff received a "lay-in" to not work. (*Id.*) Plaintiff alleged that Defendants wrongly issued a disciplinary chrono 128A against Plaintiff because he did not report to work on February 23, 2013. (*Id.*) On March 25, 2013, Plaintiff allegedly filed an inmate appeal (SATF E-13-01320) to get the 128A dismissed for which Stonestreet interviewed him on May 12, 2013. (*Id.*)

The evidence Plaintiff submitted in opposition to Defendants' motion shows that in IA 1320 Plaintiff sought dismissal of an RVR 115 that was issued on March 15, 2013. (Doc. 88-5, Zamora Dec., Exh. A, pp. 4, 6.) In IA 1320, Plaintiff attached two RVRs (E-13-03-008 & E-13-03-026) and objected that he did not have the opportunity to challenge a February 23, 2013 128A, which RVR E-13-03-026 relied on, since he did not even know about it until he received the RVRs. (*Id.*, pp. 4, 6, 19, 20.) Plaintiff stated that the 2/23/13 128A was used against him in two 115 hearings to increase "the seriousness of lesser offense." (*Id.*, p. 6.)

RVR #E-13-03-008 was an exhibit to IA 01320, was issued by Rasey and Stonestreet on

March 8, 2013, and was given to Plaintiff on March 15, 2013. (Doc. 106, Leos Decl., Exh. ZE, p. 92.) The first page of RVR 03-008, which is all that either party submitted, does not state anything about a 128A. (*See* Doc. 88-5, Zamora Decl., Exh. A, p. 20; Doc. 106, Leos Decl., Exh. ZE, p. 92.) RVR 03-008 states that it was issued to Plaintiff for refusing to report to his job assignment on March 8, 2013 and not having a lay-in to excuse his absence on that date. (Doc. 88-5, Zamora Decl., Exh. A, p. 20.)[5] RVR E-13-03-026 which issued on March 28, 2013 was also an exhibit to IA 01320. (Doc. 88-5, Zamora Decl., p. 19.)[6] RVR E-13-03-026, which Rasey and Stonestreet issued on March 28, 2013, was also included as an exhibit to IA 1320 and was based on Plaintiff's failure to appear for work on March 22, 2013, noting that Plaintiff had received two RVR 115's for "Refusal to Report to Assignment" on March 8, 2013 and March 10, 2013, as well as a 128A on February 23, 2013. (*Id.*) A CDC 128A dated February 23, 2013, which noted that Plaintiff did not report to work and did not have a lay-in for that day was also included in the exhibits to IA 01320. (Doc. 88-5, Zamora Decl., p. 14.)

In the First Level Review of IA 01320, Stonestreet notes relying on information provided by M.V. Carrasquillo, R.N. from Plaintiff's electronic Unit Health Record ("eUHR"). (Doc. 88-5, Zamora Decl., Exh. A., pp. 10, 11.) Stonestreet noted that in IA 01320, Plaintiff stated he was injured while working as a lineserver on February 22, 2013 and was seen by the doctor who ordered him not to perform the work that caused his injuries and issued medication. (*Id.*, p. 11.) However, based on information Nurse Carrasquillo provided, Stonestreet found that Plaintiff was "not issued a medical lay-in and did not at any time mention a work related injury to the (PCP)." (*Id.*) Stonestreet partially granted IA 01320 in as much as Plaintiff could submit a Form 22 to request to speak with his counselor, but denied the rest of IA 01320 finding that Plaintiff did not mention any forearm pain or work related injury and that there was no mention of a lay-in during

---

[5] March 8, 2013 fell during the time period previously noted (March 5, 2013 - April 10, 2013) where no evidence was submitted to show that Plaintiff had a lay-in to miss work. Neither side submitted a 128A which was issued for Plaintiff refusing to report to work on March 8, 2013. However, Plaintiff submitted a 128B, dated March 9, 2013, in which the Supervising Cook I recommended Plaintiff be removed from his current position because he had not reported since February 20, 2013. (Doc. 106, Leos Decl., Exh. K, p. 43.)

[6] A copy of RVR E-13-05-030 which Plaintiff apparently submitted with his request for second level review was also included. (Doc. 88-5, Zamora Decl., Exh. A, p. 18.) However, neither side produced any evidence that it was part of Stonestreet's investigation for the first level review of IA 01320; rather, RVR E-13-05-030 is the RVR that Stonestreet filed against Plaintiff *after* his investigation of IA 01320 -- which Plaintiff alleges was retaliatory.

Plaintiff's visit with the physician on February 22, 2013. (*Id.*) Stonestreet further found that Plaintiff never reported a work related injury to his supervisor on February 22, 2013 and that he did not obtain a lay-in until 1150 hours on February 23, 2013, after Plaintiff's work hours ended. (*Id.*) Stonestreet submitted evidence that he asked Nurse Carrasquillo to review Plaintiff's UHR regarding the issues raised in IA 01320 and supporting documentation since, as a custody staff member, Stonestreet cannot access an inmate's UHR. (Doc. 88-8, Stonestreet Decl., ¶7.) Defendants submitted a copy of Nurse Carrasquillo's findings upon which Stonestreet relied. (*Id.*, p. 9; *see also* doc. 88-6, Carrasquillo Decl., Ex. A, p. 7.)

Plaintiff accurately points out a number of errors with Nurse Carrasquillo's findings. First, for the entry of February 22, 2013 at 1436 when Plaintiff was seen by his PCP, Nurse Carrasquillo noted that he had "complaints of forearm pain and a recently submitted 7362, PCP notes 'doing well,'" and "Pl did not inform/report his PCP of a work related injury." (Doc. 88-6, Carrasquillo Decl., Ex. A, p. 7.) However, Plaintiff submitted a copy of the 7362 which he contends he filled out that day and gave to the physician, which is the "recently submitted 7362" noted by the PCP and Nurse Carrasquillo. (Doc. 106, Leos Decl., Exh. C, p. 27.) The reason Plaintiff gave for requesting health care services on February 22, 2013 in that form is:

> I was injured in 2007 w/ damage to right hand. I began a new job today in kitchen pushing heavy carts & carry heavy trays & repetitive serving motion with R hand sweeping, etc. I felt something tare/rip from wrist around to middle [hurts to write now] Around 7 a.m. took pain meds. Did not really notice until they wore off when I got home how much pain. Can I get a wrist supporter?

(*Id.*) Plaintiff states that, after leaving work on February 22, 2013, he went to medical and requested to be seen, in response, a nurse told him that he would only be seen for chronic care, but if he filled out a 7362 the doctor would consider it at his scheduled appointment. (*Id.*, ¶23.) Plaintiff further states that a few hours later he was called to see Dr. Ogbuehi, handed him this 7362, and discussed his work serving that day and the repetitive motions, which the doctor acknowledged. (*Id.*, ¶24.) This certainly suffices for Plaintiff to have notified the physician he saw on February 22, 2013 that his work in the kitchen earlier that day caused injury or reinjured

1    Plaintiff's right hand.  Further, Plaintiff states that Dr. Ogbuehi told Plaintiff not to do those

2    actions ever again and that Plaintiff needed to take his medications, though he did not order any

3    new medications, nor issue a lay-in, Plaintiff states that Dr. Ogbuehi's signature of the

4    "Medication Reconciliation," which Plaintiff submitted, is evidence of their conversation during

5    that visit.  (*Id.*, ¶26 & Exh. D., p. 29.)  Plaintiff's evidence shows that Nurse Carrasquillo's

6    finding that Plaintiff did not did not inform or report a work related injury to his PCP is in error.

7    On further review, the primary care provider note for February 22, 2013, which Defendants

8    submitted, reflects a handwritten note "7362 addressed" under the section for diagnosis and

9    treatment plan.  (Doc. 886, Carrasquillo Decl., Exh. B, p. 9.)  Defendants did not provide any

10   evidence to find that there was another 7362 which Dr. Ogbuehi discussed with Plaintiff on July

11   22, 2013, nor do they provide any explanation upon which to find that the note "7362 addressed"

12   was not actually addressed in that exam, or that its contents were not as reflected in the copy

13   Plaintiff submitted.

14        Further, Nurse Carrasquillo relied on a Nursing Encounter Form which noted that Plaintiff

15   was seen on February 23, 2013 and noted the date and time of onset of pain was that same day at

16   0830 hours, which she noted in her chronology.  (Doc. 88-6, Carrasquillo Decl., ¶7, Exh. A., p. 7,

17   Exh. C, p. 11, 12.)  However, Plaintiff submitted a copy of the health care services request form

18   for that same date, which is signed by the RN who signed the Encounter Form Nurse Carrasquillo

19   relied on, wherein Plaintiff states the reason he is requesting medical services as:

20        On 2-22, I severely injured my right forearm and hand at work.  That part of my
21        body was already damaged from a previous injury (nerve damage) documented
          2007, 2008.  I'm unable to perform the duties required of my assigned job.  I do
22        not want to risk further injury to myself or injury to others.

23   (Doc. 106, Leos Decl., Exh. E, p. 31.)  Nurse Carrasquillo did not acknowledge Plaintiff's Health

24   Care Services Request Form in her chronology and Defendants do not provide any reason why it

25   was unaccounted for.

26        Finally, Plaintiff's evidence also shows that Nurse Carrasquillo incorrectly noted that

27   Plaintiff did not have a lay-in for February 27, 2013.  (Doc. 88-6, Carrasquillo Decl., Exh. A, p.

28   7.)  To the contrary, Plaintiff submitted a lay-in for February 27, 2013 through March 2, 2013.

1  (Doc. 106, Leos Decl., Exh. G, p. 35.)

2        Thus, Plaintiff's evidence clearly shows factual errors contained in Nurse Carrasquillo's

3  chronology of his medical records concerning the events in February and March of 2013.

4  However, as noted earlier, since Stonestreet was part of custody staff, he was unable to access

5  Plaintiff UHR and required Nurse Carrasquillo's assistance to better understand Plaintiff's

6  allegations and to determine the veracity of statements Plaintiff made in IA 01320. (*See* Doc. 88-

7  8, Stonestreet Decl., ¶7.)  At least one Appellate Circuit has held that "[o]nce a [non-medical]

8  prison grievance examiner becomes aware of potential mistreatment, the Eight Amendment does

9  not require him or her to do more than 'review [the prisoner's] complaints and verif[y] with the

10  medical officials that [the prisoner] was receiving treatment.' "  *Greeno*, 414 F.3d at 656 citing

11  *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (non-physician defendants cannot "be

12  considered deliberately indifferent simply because they failed to respond directly to the medical

13  complaints of a prisoner who was already being treated by the prison doctor" and if "a prisoner is

14  under the care of medical experts . . . a non-medical prison official will generally be justified in

15  believing that the prisoner is in capable hands.")  This Court concurs with the analysis in *Greeno*

16  and *Spruill* and finds it likewise reasonable for custody staff to rely on summations of medical

17  records provided by medical personnel when responding to an inmate appeal.  Thus, though

18  Nurse Carrasquillo's chronology of events contained errors, Stonestreet was entitled to rely on it

19  to the extent he was involved in the First Level Response to IA -1320.

20        **b.**      **RVR 13-05-030**

21        In his retaliation claim, Plaintiff alleges that, on May 20, 2013, Defendants issued an RVR

22  115 against him in retaliation for IA 01320.  (Doc. 17, SAC, pp. 5-6.)  On May 22, 2013,

23  Stonestreet allegedly issued an RVR 115 against Plaintiff for "unlawful influence," alleging that

24  Plaintiff gave false statements about his medical condition to avoid work, obtain lay-ins, and to be

25  unassigned from working the dining assignment.  (*Id.*, p. 6.)  On June 15, 2013, Plaintiff was

26  allegedly found guilty of unlawful influence on RVR 13-05-030.  (*Id.*)  On July 18, 2013,

27  Plaintiff filed another IA (SATF E-13-02832) challenging the finding of guilt on RVR 13-05-030.

28  (*Id.*, p. 7.)  On October 18, 2013, IA 02832 was granted and the RVR for unlawful influence

(#13-05-030) was allegedly dismissed.  (*Id.*)

The evidence shows that Rasey and Stonestreet issued RVR 13-05-030 on May 20, 2017 against Plaintiff for "Unlawful Influence" and it was given to Plaintiff on May 22, 2013.  (Doc. 88-8, Stonestreet Decl., Exh. C, p. 14.)  Stonestreet provides evidence that he was not involved in the handling of IA 01320 beyond the First Level of Review, but that inconsistencies uncovered during his investigation and issues raised by Nurse Carrasquillo's chronology led him to believe that Plaintiff was attempting to unlawfully influence correctional staff to obtain medical lay-ins to avoid working his job assignment.  (*Id.*, ¶11.)  Stonestreet identifies a number of instances where he felt Plaintiff gave false statements to medical personnel in an effort to avoid reporting to work. (*Id.*, ¶¶11-18.)  This culminated after Plaintiff's receipt of a month long lay in on April 11, 2013, when Plaintiff refused medical treatment, indicating that he no longer needed it since he was no longer working in the E-Facility kitchen.  (*Id.*, ¶¶19, 20.)  Defendants further show that, as part of his investigation, Stonestreet interviewed Rasey who told him that Plaintiff refused to work his assigned job duties on February 22, 2013, that he never mentioned injuring himself at work to her such that there was no CDCR Form 7219 filled out on the incident.  (*Id.*, ¶21.)  After reviewing Nurse Carrasquillo's chronology, speaking with Rasey, and the fact that Plaintiff refused to work on February 23, 2013 by telling an officer that he had a medical lay-in, when at the time he did not, Stonestreet concluded that Plaintiff was attempting to unlawfully influence correctional staff to avoid working his job assignment and issued RVR E-13-05-030 for unlawful influence in violation of section 3013.  (*Id.*, ¶¶22, 23.)

As previously noted, Plaintiff's evidence establishes inaccuracies in Nurse Carasquillo's memorandum, which Stonestreet relied on in RVR E-13-05-030.  Likewise, Plaintiff's evidence also raises questions as to the veracity of Defendant Rasey's description of the events of February 22, 2013 which she told to Stonestreet -- at least as noted and purportedly relied on by Stonestreet in RVR E-13-05-030.  Specifically, in that RVR, Stonestreet noted that Rasey informed him and she testified in the RVR hearing that Plaintiff refused to come to work on February 22, 2013 until he was ordered to report for the 0500 hours count and that after the count was cleared, Plaintiff was released early because he refused to work.  (Doc. 88-8, Stonestreet Decl., Exh. C, pp. 14, 18,

20.)

　　　To the contrary, Plaintiff's evidence shows that he arrived at the E-Dining facility around 4:00 a.m. on the morning of February 22, 2013.  (Doc. 106, Leos Decl., ¶10.)  Upon arrival, Plaintiff saw inmate Bolen in the A-side of the dining hall and asked him to show Plaintiff where to go and who was in charge.  (Doc. 106, Leos Decl., ¶10.)  Plaintiff thereafter met Rasey who asked him to wait while she spoke with inmate Rivera about another inmate who was refusing to report for work. (Doc. 106, Leos Decl., ¶10.)  Plaintiff's evidence also shows that, when he had his turn to speak with Rasey, inmate Rivera was present in her office and inmate Bolen waited right outside the door for Rasey to give him the coffee.  (Doc. 106, Leos Decl., ¶11.)  In that conversation, Plaintiff told Rasey about his prior hand injury and that using it for any duration of time causes great discomfort and pain (Doc. 17, SAC, p. 3) and he asked for a job change to be a porter in E4, but Rasey did not care for the inmate Plaintiff would be changing jobs with (Doc. 106, Leos Decl., ¶¶12, 13).  Rasey declined the job change, but told Plaintiff that if he worked for her that day and did what she and inmate Rivera told him to do, she would give him a job change, there was no talk of a lay-in.  (Doc. 106, Leos Decl., ¶¶13, 14; Doc. 88-4, Rhoan Decl, Exh. A, Leos Depo., 26:5-24.)

　　　Plaintiff's evidence also shows that he started working as a lineserver and served all the scrambled eggs for Ad-Seg and E1, refilled the empty egg pan at least once, and pushed a cart from the kitchen to E1.  (Doc. 106, Leos Decl., ¶¶15, 16; Doc 104, Rodriguez Decl., ¶¶12, 13; Doc. 104, Shofner Decl., ¶¶28-34.)  When Plaintiff returned from delivering the cart to E1, Plaintiff's evidence shows that Rasey asked if his hand was hurting; when Plaintiff responded in the affirmative, Rasey asked if he had medication he could take, and let him go get some when he again responded affirmatively.  (Doc. 106, Leos Decl., ¶17.)  The pain pill took effect immediately, Plaintiff returned and resumed serving eggs until everyone was served and thereafter followed Rasey's orders to clean up the dining hall B-side by sweeping, mopping, and cleaning-up the juice bar.  (Doc. 106, Leos Decl., ¶¶17-19.)  Rasey put out a tray of ice on February 22, 2013 and Plaintiff took some.  (Doc. 106, Leos Decl., ¶22; Doc 104, Rodriguez Decl., ¶20; Doc. 102, Shofner Decl., ¶33.)  Plaintiff's evidence shows he did not wipe tables on

1   February 22, 2013.  (Doc. 106, Leos Decl., ¶20; Doc 104, Rodriguez Decl., ¶¶15, 16; Doc. 105,

2   Spencer Decl., ¶¶5-9; Doc. 102, Shofner Decl., ¶¶31, 34.)

3          Even Rasey's declaration in support of this motion contradicts the rendition of events she

4   told Stonestreet occurred on February 22, 2013 that he repeated and relied on in RVR E-13-05-

5   030.  Specifically, in Rasey's declaration, she states that Plaintiff arrived at the dining hall on

6   February 22, 2013, at approximately 4:30 a.m. with a number of other inmate workers.  (Doc. 88-

7   9, Rasey Decl., ¶6.)  She states that Plaintiff informed her that he could not work as a lineserver

8   because his right hand was hurting him from a pre-existing injury; she asked Plaintiff if he had a

9   medical lay-in to excuse him from working to which Plaintiff responded no, but a physician was

10  supposed to give him one; she contacted the medical clinic and was informed that Plaintiff's

11  medical record did not contain a lay-in; based on this she believed Plaintiff was perfectly capable

12  of performing his assigned job duties.  (*Id.*)

13         Rasey further states that, because Plaintiff told her that his hand hurt, she assigned

14  Plaintiff to the light duty of wiping down the tables after the inmates were finished eating such

15  that, from 4:30 a.m. to approximately 7:00 a.m., while food was being prepared and served to E-

16  Facility's ASU and Ad-Seg populations, Plaintiff did not perform any job duties within the dining

17  hall.  (Doc. 88-9 Rasey Decl., ¶7.)  From approximately 7:05 a.m. to 8:05 a.m., Plaintiff wiped

18  tables as inmates finished eating and exited the dining hall.  (*Id.*, ¶8.)  Rasey states that she never

19  asked Plaintiff to scoop eggs or push heavy carts filled with food on February 22, 2013.  (*Id.*)

20  The inmate workers, including Plaintiff, ate from 8:05 a.m. to 9:05 a.m. after which she released

21  several, including Plaintiff.  (*Id.*, ¶10.)  Rasey states that Plaintiff did not tell her he had injured

22  himself on February 22, 2013, thus a CDCR Form 7219 was not filled out to document any

23  injury.  (*Id.*)  Rasey does not recall setting out a tray of ice and did not see Plaintiff leaving with

24  an ice compress on his right hand or wrist.  (*Id.*, ¶11.)  This evidence contradicts Stonestreet's

25  note in RVR E-13-05-030 that Rasey informed him Plaintiff refused to come to work on February

26  22, 2013 until he was ordered to report for the 0500 hours count and that after the count was

27  cleared, Plaintiff was released early because he refused to work.  (Doc. 88-8, Stonestreet Decl.,

28  Exh. C, pp. 14, 20.)

Plaintiff provides no evidence upon which to find that Stonestreet was aware of the inaccuracies in Nurse Carrasquillo's chronology or in Rasey's statement to him regarding the events that occurred on February 22, 2013. Thus, Plaintiff presents no basis to find that Stonestreet should not have relied on them when he filed RVR E-13-05-030 against Plaintiff, or that he did so out of retaliatory animus because of IA 01320. Based on the information available to Stonestreet and affording him the "appropriate deference and flexibility" evaluating his "proffered legitimate penological reasons," *Pratt*, 65 F.3d at 807, the Court finds that Plaintiff has failed to show that Defendant filing of RVR E-13-05-030 did not advance legitimate penological goals and was retaliatory for IA 01320.

However, Plaintiff's evidence shows that the statement Rasey's provided to Stonestreet, which he relied on in RVR E-13-05-030, and her testimony at the hearing on that RVR appears to be contradictory. Thus, drawing all inferences in Plaintiff's favor, *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 942, the Court finds that there is sufficient evidence for a reasonable jury to find that Rasey's statements relied on in RVR E-13-05-030 were not given for a legitimate penological purpose, but out of retaliation for IA 01320. Summary judgment should thus not be granted on Plaintiff's retaliation claim against Rasey.

### C. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity on Plaintiff's claims. Defendants' motion for qualified immunity on Plaintiff's retaliation claim against Stonestreet and deliberate indifference claims against Stonestreet and Rasey need not be considered since they are entitled to summary judgment on the merits of those claims.[7] However, Plaintiff's retaliation claim against Rasey must be addressed.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the

---

[7] Defendants also moved for summary judgment on any conspiracy claim Plaintiff may have against them based on the SAC mentioning that they "collaborated together" to issue the falsified RVR. (Doc. 88-2, Def. P&A, 22:23-23:19, quoting Doc. 17, SAC, pp. 5-6.) However, no such claim was identified by Plaintiff in the SAC (*see generally* Doc. 17), nor was any such claim listed in the order finding Plaintiff's claims cognizable (Doc. 19, Cog O, 1:20-23). Plaintiff is not proceeding on a conspiracy claim in this action. Thus, Defendants' motion for summary judgment thereon need not be addressed.

challenged conduct." *Taylor v. Barkes*, --- U.S. ---, 135 S.Ct. 2042, 2044 (June 1, 2015) quoting *Reichle v. Howards*, 566 U. S. 658, 132 S.Ct. 2088, 2092 (2012). Qualified immunity analysis requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009); *see also Pauluk v. Savage* , --- F.3d. ---, 2016 WL 4598287, *8 (9th Cir. Sept. 8, 2016). These prongs need not be addressed in any particular order. *Pearson v. Callahan,* 555 U.S. 223 (2009).

To determine whether a government official should be granted qualified immunity, under the first prong, the facts are to be viewed "in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds by Pearson*, 355 U.S. at 817-21; *see also Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010). However, the existence of a material factual dispute does not necessarily preclude a finding of qualified immunity. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1053 (9th Cir. 2002).

Under the second prong, clearly established law is not to be defined "at a high level of generality." *White v. Pauly*, --- S.Ct. ---, 2017 WL 69170, *4 (January 10, 2017) quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *see also Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 308 (2015) quoting *al-Kidd, supra* at 742. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' " *Ibid.* (emphasis added in *Mullinex*). "This inquiry ' " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " ' " *Id.*, quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam ) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" to officers, *White*, at *5, quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997), but "in the light of pre-existing law the unlawfulness must be apparent," *Id.*, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The relevant inquiry is whether existing precedent placed the conclusion that [the defendant] acted unreasonably in the [specific circumstances confronted] 'beyond debate.' "

1  *Mullenix*, *supra*, at 309 quoting *al–Kidd, supra*, at 741.

2      "To be clearly established, a right must be sufficiently clear that every reasonable official

3  would have understood that what he is doing violates that right." *Reichel*, 132 S.Ct. at 2092; *see*

4  *also Castro v. County of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016). "When properly applied,

5  [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the

6  law." *al-Kidd*, 563 U.S. at 743 (citation and internal quotation marks omitted). "We do not

7  require a case directly on point, but existing precedent must have placed the statutory or

8  constitutional question beyond debate." *Id.*, at 741. "[A] 'robust consensus of cases of

9  persuasive authority' " in the Courts of Appeals *could* establish the federal right [in question]."

10  *City and County of San Francisco v. Sheehan,* --- U. S. ---, 135 S.Ct. 1541, 1778 (2015) (slip op.,

11  at 16) (emphasis added) (word choice of "could" (i.e. possibility) by the Court noteworthy and

12  distinguishable from a finding that a "robust consensus" of appellate court decisions "*would"* or

13  *"shall"* (i.e. definitive) establish the existence of a federal right).

14      Defendants argue that, though it was clearly established in May 2013 that inmates have a

15  First Amendment Right to file prison grievances, if Defendants violated Plaintiff's rights, they

16  were not aware of it. (Doc. 88-2, Def. P&A, 25:19-26:8.) To this end, Defendants argue that

17  Rasey merely assisted Stonestreet in furtherance of investigating a possible rule violation, which

18  was not unconstitutional. (*Id.*) As to the first prong of the analysis, for the reasons previously

19  discussed and drawing all inferences in Plaintiff's favor, there is sufficient evidence for a

20  reasonable jury to find that Rasey's conduct violated Plaintiff's right to be free from retaliation

21  for engaging in protected activity. The law prohibiting falsifying RVRs in retaliation for an

22  inmate's protected conduct was clearly established in 2013. To be precise, since 1997, it has been

23  clearly established that an inmate's constitutional rights are violated where prison personnel make

24  false accusations against an inmate in rules violation proceedings out of retaliation for an

25  inmate's protected conduct. *See Hines v. Gomez*, 108 F.3d 265, 268-69 (9th Cir. 1997). This is

26  the basis of Plaintiff's retaliation claim against Rasey. Thus, Rasey is not entitled to qualified

27  immunity on Plaintiff's retaliation claim.

28  ///

## RECOMMENDATION

For the reasons stated above, this Court finds that Defendants have met their burden and their motion for summary judgment on some of Plaintiff's claims should be granted, but that Rasey is not entitled to summary judgment or qualified immunity on Plaintiff's retaliation claim against her.

Accordingly, the Court **RECOMMENDS**:

(1)    Defendants' motion for summary judgment (Doc. 88) be **GRANTED in PART** and **DENIED in PART** as follows:

    (a)    Summary judgment on Plaintiff's deliberate indifference claim under the Eighth Amendment against Stonestreet and Rasey be **GRANTED**;

    (b)    Summary judgment on Plaintiff's retaliation claim under the First Amendment against Stonestreet be **GRANTED**;

    (c)    Summary judgment on Plaintiff's retaliation claim under the First Amendment against Rasey be **DENIED**;

(2)    Plaintiff and Rasey be ordered to advise whether a settlement conference would be beneficial before trial is scheduled.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 21 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __January 30, 2018__           __/s/ Jennifer L. Thurston__
                                            UNITED STATES MAGISTRATE JUDGE